[No. 16724-3-I.  Division One.  April 29, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. LAURENCE
M. OLSON, *Appellant*.

*Keith C. Thomson* and *Clinton, Fleck & Glein*, for
appellant.

*Norm Maleng, Prosecuting Attorney*, and *Anne Brem-
ner, Deputy*, for respondent.

GROSSE, J.—Laurence M. Olson appeals from a judgment
and sentence for the crime of computer trespass. He con-
tends that this conduct did not come within the prohibition
of the statute.

RCW 9A.52.110 reads as follows:

Computer trespass in the first degree. (1) A person is guilty of computer trespass in the first degree if the person, without authorization, intentionally gains access to a computer system or electronic data base of another; and

(a) The access is made with the intent to commit another crime; or

(b) The violation involves a computer or data base maintained by a government agency.

(2) Computer trespass in the first degree is a class C felony.

RCW 9A.52.010(6) defines "access":

"Access" means to approach, instruct, communicate with, store data in, retrieve data from, or otherwise make use of any resources of a computer, directly or by electronic means.

The trial court entered certain findings to which no error was assigned. Therefore, these become verities on appeal. *State v. Moses,* 70 Wn.2d 282, 284, 422 P.2d 775, *appeal dismissed, cert. denied,* 389 U.S. 428 (1967). Those findings were as follows:

I.

That between the dates of [*sic*] and August 16, 1984, Laurence M. Olson, the defendant herein, was a duly commissioned police officer for the University of Washington Police Department in Seattle, King County, Washington.

II.

During the above dates, the defendant was assigned to communications.

III.

That on August 16, 1984 Officer Ernest M. Salotti of the University of Washington Police Department discovered some photographs of young women paperclipped to computer print–out sheets in the communications center.

IV.

Officer Salotti made this discovery after relieving Officer Laurence M. Olson at the departments Communication Center.

V.

That Officer Salotti turned the print–outs over to Sergeant Brown, who in turn, gave the print–outs to Lieutenant Randy Stegmeier.

## VI.

Lieutenant Stegmeier checked the Communication Center logs regarding personnel duty status for July 8th between 3:47 and 4:17 a.m. when the print–outs were executed. He discovered that Officer Olson had been the only person on duty. He examined the print–outs and noted that the pictures were of young co–eds from the University of Washington and were attached to print–outs from the University of Washington Police Department computer. These print–outs contained information about the co–eds. Upon further inquiry, he found that the print–outs and photos were in no way connected to an ongoing police investigation.

## VII.

On August 17, 1984, Lieutenant Stegmeier confronted Olson with the print–outs. Pursuant to a consensual search of Olson's locker, numerous other similar print–outs attached to young co–eds' photos were found.

## VIII.

That all of the print–outs concerned herein were obtained from a government data–base; namely, that of the Washington State Department of Licensing.

In a finding to which Olson did assign error, the trial court indicated reliance on an order on a pretrial motion that Olson had no authority to access information about co–eds.

Olson's contention, both at trial and here on appeal, is that his conduct does not amount to unauthorized access either as a matter of fact or as a matter of law. We believe that the evidence at trial showed only unauthorized use of computer data which is not prohibited by this statute. Therefore, we reverse the conviction.

■■ Our initial task is to determine what conduct is prohibited by RCW 9A.52.110; in other words, the legislative intent. Whenever we are faced with a question of statutory interpretation we look to the plain meaning of the words used in the statute. In subsection (1) of RCW 9A.52-.110 the phrase "without authorization" modifies the phrase "intentionally gains access". Thus the unlawful act is unauthorized access. "Authorize" means "to endorse, empower, justify, or permit by or as if by some recognized or proper

authority (as custom, evidence, personal right, or regulating power)". *Webster's Third New International Dictionary* 146 (1981). The testimony that Olson had an access code establishes that he was permitted to "approach, instruct, communicate with, store data in, retrieve data from, or otherwise make use of any resources of a computer, directly or by electronic means." RCW 9A.52.010(6).

In determining legislative intent, the title of an act bears consideration. *Godfrey v. State*, 84 Wn.2d 959, 530 P.2d 630 (1975). The title of the act is Computer Trespass, Laws of 1984, ch. 273. Historically, a trespass was an intrusion or invasion into tangible property which interfered with the right of exclusive possession. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 13 (5th ed. 1984). In the context of computers, a trespass is an invasion or intrusion upon the data base. The general trespass statutes criminalize the entering and remaining upon premises when not licensed, invited, or privileged to enter or remain. By analogy, the computer trespass statute criminalizes the entry into the computer base, not the use of the information obtained. Of course, we can imagine situations where there are conditions attached to computer access. However, the facts of the instant case establish an unauthorized use of data, not a conditioned access.

The trial court reviewed stipulated police reports. Our review of these reports supports Olson's position that departmental policy prohibited certain uses of data but did not withdraw permission to "access" the computer. The pertinent provisions of the various reports are as follows:

The offense report: "There is no indication that any of this material is connected to any investigation being conducted by UWPD nor to any investigation we have conducted in the recent past."

A statement signed by Sergeant Franklin: "These inquiries were not part of any official inquiry by Officer Olson, but were solely for his own use for some sort of collection he called his Rogues Gallery."

Lieutenant Stegmeier's statement: "I advised him that

this was a gross misuse of Departmental equipment and State information systems and a violation of departmental policy."

Sergeant Robert White's statement: "Information received on the ACCESS terminal is regarded as the official business of the UWPD and is not to be divulged outside the department without proper authority. This policy is contained in the UWPD Departmental Procedures Manual, section 14.03.00, Use of Teletype/Computer Systems."[1]

While the evidence shows that certain uses of retrieved data were against departmental policy, it did not show that permission to access the computer was conditioned on the uses made of the data. This is a critical distinction. In *State v. Clark*, 96 Wn.2d 686, 638 P.2d 572 (1982), defendant Clark was given permission to use Dennis Noll's car to run some errands and return at noon. Instead, he drove to Colorado with the car and was charged with taking a motor vehicle without the owner's permission. In holding that the facts described the offense of theft rather than taking and riding, the Supreme Court applied reasoning that is applicable to the instant case.

We think the appellant was clearly a bailee of Noll's vehicle since he was entrusted with the car to do certain errands and return. Also, the above theft statute clearly covers the appellant's conduct without having to interpret RCW 9A.56.070(1) expansively. It would seem logical that RCW 9A.56.070(1) is intended only to prevent the initially unauthorized use of a vehicle. Otherwise, the theft statute and the joyriding statute would proscribe the same conduct, yet a defendant potentially could suffer a different penalty depending on which crime was charged. We do not believe such an overlap between RCW 9A.56.020 and RCW 9A.56.070(1) was intended by the legislature. If we were to accept the state's argument that exceeding the scope of permission is violative of

---

[1]The policy manual was not admitted at trial. While we cannot consider the contents of the manual for determining the sufficiency of the evidence to show unauthorized access, we note that the manual by its terms does not condition access to the computer system on whether the information retrieved will be used for personal purposes.

RCW 9A.56.070(1), we would be forced to arrive at absurd results. For instance, if a person takes a car with the owner's permission, then exceeds that permission to some degree, we would be compelled to find him guilty even if he returns the car to the owner. We cannot believe the legislature intended such a result.

*Clark,* at 691–92. The actus reus of the joyriding statute is the taking or driving away of the vehicle without permission. The actus reus of the computer trespass statute is accessing a computer without authorization. At the time Clark drove away the car he had permission. At the time Olson retrieved data he had authorization. It was the personal use of this data after access that was against departmental policy.

Regrettably, the trial court relied on a pretrial order to find lack of authorization. It is a basic rule of law that a trier of fact cannot make a finding of fact based on evidence heard by another trier of fact. *See Tacoma Recycling, Inc. v. Capital Material Handling Co.,* 42 Wn. App. 439, 711 P.2d 388 (1985).[2] The trial court in the instant case was required to find lack of authorization beyond a reasonable doubt after independently reviewing the evidence. It committed error when it relied on a pretrial order to find lack of authority to access the computer.

■ The standard for sufficiency of the evidence was set forth in *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). "[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.'"* *Green,* at 221 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)). Taken in a light most favorable to the prosecution, the police reports indicate, at most, a violation of departmental policy on the use of computer data. They do not establish unauthorized access beyond a reasonable

---

[2]The law of the case doctrine does not apply to the instant case. That doctrine only precluded the trial court from reconsidering the pretrial motion. *See Adamson v. Traylor,* 66 Wn.2d 338, 402 P.2d 499 (1965).

doubt.

This matter is reversed and remanded to the trial court with instructions to dismiss.

RINGOLD, A.C.J., and PEKELIS, J., concur.