[No. 26869-4-I. Division One. August 17, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. ANTHONY MICHAEL SIMS, *Appellant.*

*Joshua Weinstein* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lynn Moberly, Deputy,* for respondent.

PEKELIS, J. — Michael A. Sims[1] appeals from his exceptional sentence upward entered following his conviction for first degree burglary. He assigns error to the denial of his motion to be sentenced by the trial judge as well as to the sentencing court's refusal to conduct an evidentiary hearing to determine facts for sentencing. Sims also contends that the record does not support the sentencing court's reasons for imposing his exceptional sentence. We affirm.

---

[1]This is the name the appellant uses in signing documents.

## I

Sims was charged by information dated May 1, 1990, in King County Superior Court with first degree burglary, contrary to RCW 9A.52.020.[2] The information alleged that Sims entered and remained unlawfully in the dwelling of Katherine Eddy and, while inside, assaulted her.

The matter proceeded to trial on July 16, 1990, before Judge Donald McCulloch, a visiting judge from another county, who presided over Sims' case as part of the King County Superior Court backlog reduction program.

At trial, Eddy, a 78-year-old woman, testified about the burglary. She stated that she was awakened in the early morning hours of April 26, 1990, by a person later identified as Sims, who was standing in her living room. Sims seized her car keys and money from her purse, which was lying on a nearby coffee table. According to Eddy, Sims then approached her,

> grabbed my hair and . . . started hitting me.
>
> . . . .
> . . . [H]e took ahold [sic] of me with one hand and started hitting me with the other and told me that he was going to break my neck. He said it was easy, just twist, and that he was going to kill me and that my car would be his car.

Eddy managed to pull away from Sims and ran out her front door. She fled to her neighbor's house, and the police were called. Eddy also testified that she recognized Sims as "Mr. Green", who had recently attempted to rent her basement apartment. However, after Eddy took a rental deposit from Sims and his wife, who are African-Americans, she rented the apartment to someone else. Eddy denied telling defense counsel that she would never rent her apartment to an African-American, but did admit that she had never before rented her apartment to an African-American.

Dr. Terry Mengert testified that he treated Eddy at the University of Washington Medical Center emergency room

---

[2]Under RCW 9A.52.020, "[a] person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling . . ., the actor . . . (b) *assaults any person therein.*" (Italics ours.)

on the date of the incident. According to Dr. Mengert, Eddy was "awake, alert, oriented; and her lips were swollen and she was otherwise normal in appearance."

Seattle Police Officer Felix G. Solis testified that he contacted Eddy near the scene of the incident around 1:25 a.m. on April 26, 1990, when responding to a report of burglary and assault. According to Officer Solis, Eddy "appeared to be in a state of shock. She was bleeding from the mouth. She was very upset. She was semi hysterical." Officer Solis also testified that he found a wallet on the sidewalk in front of a stairway leading to Eddy's house. The wallet was dry, while the area around the wallet was damp from recent rainfall. The wallet contained the identification of Michael Sims and Michael Ellison.

Sims' wife, Roseanne Green, was the primary witness for the defense. She testified that she and Sims had been to the Eddy residence in mid-April seeking to rent her basement apartment. Green also testified that Sims was asleep with her at the time of the burglary.

During closing argument, the deputy prosecutor referred to Eddy as "a frail, old woman". He stated that Sims

> knew Mrs. Eddy was maybe a bit old, maybe was losing her memory and maybe it could be easy to dispatch, but it didn't work out that way. Mrs. Eddy was a little bit more feisty. She was a little bit stronger than her frail frame suggests, and she got away.

On July 20, 1990, the jury found Sims guilty as charged.

On August 6, 1990, defense counsel made a motion to have Sims sentenced by Judge McCulloch. The motion asserted that Sims "will be prejudiced by having a judge who did not hear the evidence in the trial sentence him. There were mitigating factors which came out in the evidence at trial which [cannot] be adequately conveyed to another judge." At a hearing on the motion, the court stated:

> Judge McCulloch was invited to King County as a visiting judge from Cowlitz County — that money has been fully used in the backlog reduction program that we have. This county — or this Court has no need to bring him back to do this sentencing. The Defendant is indigent. Recognizing the cost of his

defense, I don't imagine that Cowlitz County is going to pay for him to come here to do the sentencing for a King County Defendant. So the reasons are purely economic. . . .

The court tentatively denied the motion, indicating that it would confer with Judge McCulloch to determine whether he thought there was a need for him to impose Sims' sentence and to determine whether there were funds available for his return. The motion was subsequently denied.

On August 24, 1990, a sentencing hearing was held before Judge Robert Dixon. At the hearing, the State recommended that the trial court go outside the standard sentencing range, which was 77 to 102 months, and impose an exceptional sentence of 180 months. The State's recommendation was based on several alleged aggravating factors, including particular vulnerability of the victim and deliberate cruelty. The deputy prosecutor provided the following information to the sentencing court:

Basically on April 24th of this year at 1:30 in the morning Mrs. Eddy, who was a 79-year-old [*sic*] woman at this time, was sitting in her home, dozing in front of the television when she was awakened by someone pulling at her hair trying to strangle her. She recognized this person as Mr. Michael Green who had been at her house some days earlier looking to rent an apartment. She asked Mr. Green what he was doing and why he was choking her and hitting her. And he said, I will kill you and your car will be mine. And he, as she was fighting, taunted her further, telling her it's easy to break your neck, just turn your head and twist it.

The deputy prosecutor then argued that:

[Sims] in his actions in beating [Eddy] about the head and face and taunting her in that manner was acting with deliberate cruelty in this conduct. And also that this particular victim, being 78 years old, and in a state of frailty, known to the defendant as he had had contact with her at least on two occasions, was a particularly vulnerable victim as a result of her age. Basically, if Mrs. Eddy had not been as feisty as she was, if she did not have the instincts for survival which she showed and overcome the defendant enough so that she was able to escape from him, the charge that the defendant might have might be much more serious.

The deputy prosecutor also stated that Eddy was in fear of retaliation from Sims, based on Sims' conduct during trial. The following exchange then transpired:

MS. POLLOCK: I would object, Your Honor.

THE COURT: Why?

MS. POLLOCK: Because I don't think this is true. Your Honor wasn't there. This is a real problem.

THE COURT: Were you there?

MS. POLLOCK: Yes.

THE COURT: Well, let him make his statement and if you say it's not correct, I'll hear from you.

Defense counsel made no subsequent objections regarding the accuracy of the deputy prosecutor's factual statements.

When defense counsel addressed the sentencing court, the following exchange occurred:

MS. POLLOCK: Good afternoon, Your Honor. Of course, this was a trial in front of Judge McCulloch of Cowlitz County. I think the Court may be somewhat disadvantaged in having not been at trial and seeing the evidence and heard the evidence.

THE COURT: Well, that's probable [sic] true but I sentence hundreds of people who don't go to trial.

MS. POLLOCK: I understand that, but many of the prosecutor's factors are based on evidence that he believes came out at trial. I think that's somewhat difficult. . . .

Defense counsel then proceeded to argue that the facts of Sims' case did not justify an exceptional sentence.

The sentencing court considered the presentence reports submitted by both counsel and the Department of Corrections (DOC) before imposing sentence. The DOC report included a statement by Eddy that she had been "beaten on the left side of her face and was told by Mr. Sims he was going to kill her and her car would be his." The report recommended an exceptional sentence based on the fact that Eddy "is a 78 year old defenseless woman". Defense counsel's report recommended a sentence at the bottom of the standard range. The defense report stated that "[t]his Court may be somewhat disadvantaged in having not heard the testimony at trial, but the facts simply are not present

to justify an exceptional sentence." The report also referred to jurors' comments to defense counsel after the trial that the sentencing court should "go easy" on Sims because his attack on Eddy may have been precipitated by her unfair treatment of him and his wife with respect to the rental of her apartment and by her racial prejudice.

At the conclusion of the hearing, the sentencing court imposed an exceptional sentence of 153 months based on two reasons: (1) the particular vulnerability of the victim and (2) deliberate cruelty.[3] The court entered the following written findings of fact to support its reasons:

> 1) That the defendant knew that the 78 year old victim was particularly vulnerable due to her advanced age.
> 2) That the defendant's attack on this victim at 1:30 and conduct consisting of beating her about the face and choking her manifested deliberate and unnecessary cruelty.

Sims appeals from his exceptional sentence.

## II

Sims' first contention is that the imposition of his exceptional sentence by a different judge than the one who conducted his trial violated RCW 2.28.030(2).

RCW 2.28.030(2) prohibits a judicial officer from acting as a judge when he or she was not present and sitting as a judge at the hearing of a matter submitted for the court's decision.[4] *State v. Soto*, 45 Wn. App. 839, 842, 727 P.2d 999

---

[3]Prior to reaching his decision, the sentencing judge stated: "I do believe, on the basis and the information that's been supplied to me, that this is an elderly lady who was preyed upon by this defendant and that she is uniquely vulnerable because of her age. And I am further of the opinion that the defendant was deliberately and unnecessarily cruel to her. There was absolutely no reason for him to engage in the physical contact with this lady that he engaged in. It was simply a deliberate act that I think was probably done simply for his own gratification."

[4]RCW 2.28.030 provides, in pertinent part, that:

"A judicial officer is a person authorized to act as a judge in a court of justice. Such officer shall not act as such in a court of which he is a member in any of the following cases:

" . . . .

"(2) When he was not present and sitting as a member of the court at the hearing of a matter submitted for its decision."

(1986). Nevertheless, our Supreme Court has recognized that the imposition of sentence by the trial judge is not constitutionally mandated and that a judge other than the one who presided at trial has the power to impose sentence. *See Jaime v. Rhay*, 59 Wn.2d 58, 61-62, 365 P.2d 772 (1961); *State v. Lindsey*, 194 Wash. 129, 132-33, 77 P.2d 596, *cert. denied*, 305 U.S. 637 (1938).

Moreover, in *Soto*, this court held that a legally presiding juvenile court commissioner who had not tried the case could nevertheless impose sentence without violating RCW 2.28.030(2). 45 Wn. App. at 843. The court stated that "RCW 2.28.030 requires *only* that the particular matter disposed of by a judge shall have been submitted to him according to law." (Italics ours.) *Soto*, 45 Wn. App. at 843 (citing *Rhay*, 59 Wn.2d at 61).

However, Sims asserts that the sentencing judge's imposition of his sentence violated RCW 2.28.030(2) because the State was seeking an exceptional sentence and the trial judge was available. He argues that these "special circumstances" required the judge who presided at trial to impose his sentence. Sims' reasoning is that different judges can draw different inferences from the same objective facts, thereby leading them to impose different sentences. Sims argues that in an exceptional sentence case, "the judge who heard the entire testimony and had the opportunity to observe the witnesses" must be the one to impose sentence.

We disagree. Although there may be a situation in which fundamental fairness would require that it be the trial judge who imposes an exceptional sentence, RCW 2.28.030(2) cannot reasonably be read as mandating this procedure. Moreover, there is no basis to suspect that such a situation is present here. Sims presented an alibi defense at trial and thus introduced no mitigating evidence that might have afforded the trial judge a substantially more informed perspective or fuller appreciation of the facts of the case. In addition, the information presented at the sentencing hearing by the State regarding Eddy's particular vulnerability and Sims' deliberate cruelty was *undisputed*. Further, the

sentencing judge considered mitigating information presented by Sims that the jurors thought the sentencing court should "go easy" on him because the attack may have been precipitated by Eddy's conduct toward him and by her racial prejudice. Under these circumstances, it was not necessary for the trial judge to be the one to impose Sims' exceptional sentence.

We also reject Sims' assertion that if the trial judge is "available", that judge must necessarily be the one to impose sentence. Sims relies on *State v. Bowen*, 12 Wn. App. 604, 610, 531 P.2d 837 (1975) in support of his assertion. In *Bowen*, Division Two of this court upheld the imposition of sentence by a different judge than the trial judge, who had since left the bench, but expressly limited its holding to "situations where the substitution occurred as a result of a circumstance which cannot be controlled, such as death, retirement or expiration of term." 12 Wn. App. at 610. The court did not decide whether the same result would obtain "where mistake or the momentary unavailability of the original judge was the cause of the substitution." *Bowen*, 12 Wn. App. at 610. We now decide the question left open in *Bowen* and hold that the imposition of sentence by a different judge than the trial judge, even where the trial judge is not strictly unavailable, is not violative of RCW 2.28.030(2).

### III

Sims contends alternatively that if a different judge was permitted to sentence him, that judge should have conducted an evidentiary hearing to determine the facts for sentencing. RCW 9.94A.370(2) provides, in pertinent part, that:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. . . . *Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point.* . . .

(Italics ours.) Here, defense counsel did not request an evidentiary hearing or dispute any material facts. Rather, she

made only general statements that the sentencing judge "may be somewhat disadvantaged" in not having been at trial. Even when the sentencing judge expressly invited defense counsel to dispute any of the State's factual assertions, she did not do so. Thus, Sims was not entitled to an evidentiary hearing under RCW 9.94A.370(2).

Sims also argues that he was entitled to an evidentiary hearing because the sentencing judge was prohibited from making findings of fact based on evidence heard by the trial judge. However, *State v. Olson*, 47 Wn. App. 514, 519, 735 P.2d 1362 (1987), which Sims cites, is inapposite. In *Olson*, this court found error where a trial court relied on a pretrial order to make a finding of fact. 47 Wn. App. at 519. The court stated that "[i]t is a basic rule of law that a trier of fact cannot make a finding of fact based on evidence heard by another trier of fact." *Olson*, 47 Wn. App. at 519. However, a sentencing judge is not a "trier of fact". Moreover, the sentencing judge's findings here were based on information presented at the sentencing hearing, including unchallenged statements made by the deputy prosecutor.[5] Hence, an evidentiary hearing was not required.

IV

Sims' final contention is that the sentencing court erred in relying on particular vulnerability of the victim and deliberate cruelty as aggravating factors which justified the imposition of his exceptional sentence.

When reviewing an exceptional sentence, this court must first determine whether the trial court's reasons are supported by the record. RCW 9.94A.210(4)(a); *State v. McAlpin*, 108 Wn.2d 458, 462, 740 P.2d 824 (1987); *State v. Nordby*, 106 Wn.2d 514, 517, 723 P.2d 1117 (1986). Because this is a factual question, the sentencing judge's reasons will be upheld if they are not "clearly erroneous". *McAlpin*, 108 Wn.2d at 462; *Nordby*, 106 Wn.2d at 517-18.

---

[5]Under the Sentencing Reform Act of 1981, the information to which a sentencing court may look in determining a sentence includes statements by counsel. *See* RCW 9.94A.370(2); *State v. Handley*, 115 Wn.2d 275, 282-83, 796 P.2d 1266 (1990); *State v. Herzog*, 112 Wn.2d 419, 430-31, 771 P.2d 739 (1989).

Sims argues first that the sentencing court's finding that Eddy was "particularly vulnerable" was clearly erroneous because it was not supported by the record. He contends that Eddy's advanced age alone was insufficient to establish that she was particularly vulnerable.

■ RCW 9.94A.390(2)(b) states that the sentencing court may consider that "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to . . . advanced age". Where the victim of an offense is particularly vulnerable due to advanced age, then that fact alone is as a matter of law sufficient to justify the imposition of an exceptional sentence. *See State v. Clinton*, 48 Wn. App. 671, 676, 741 P.2d 52 (1987); *State v. Stuhr*, 58 Wn. App. 660, 665, 794 P.2d 1297 (1990), *review denied*, 116 Wn.2d 1005 (1991). The fact that a victim responded well to the situation does not affect the victim's vulnerability. *State v. Vandervlugt*, 56 Wn. App. 517, 522, 784 P.2d 546 (1990).

Here, the record showed that Eddy was 78 years old. Moreover, a reasonable inference to be drawn from the evidence is that Sims knew of Eddy's advanced age because he had prior contact with her before choosing her as a victim. Thus, under *Clinton*, the record here was sufficient to justify imposition of Sims' exceptional sentence on the basis of particular vulnerability of the victim.

■ Sims also contends that the trial court's finding of "deliberate cruelty" is not supported by the record. This factor has been defined as gratuitous violence, either physical, psychological or emotional, which is significantly more serious or egregious than typical of the crime. *State v. Delarosa-Flores*, 59 Wn. App. 514, 518, 799 P.2d 736 (1990) (citing *State v. Franklin*, 56 Wn. App. 915, 786 P.2d 795 (1989), *review denied*, 114 Wn.2d 1004 (1990)), *review denied*, 116 Wn.2d 1010 (1991).

Sims claims that his assaultive behavior toward Eddy was insufficient to support a finding of deliberate cruelty because burglary in the first degree includes assault as an element. He maintains that the record before the sentenc-.

ing court did not demonstrate that the assault was an "end in itself" or "atypical" of an assault committed during a burglary. According to Sims, the evidence demonstrates that the assault was perpetrated to exact Eddy's compliance during the burglary.

The record does not support Sims' contention. Generally, only one blow is necessary in order to charge first degree burglary. Thus, Sims' repetitious striking of Eddy may be considered aggravating. *See State v. Holyoak*, 49 Wn. App. 691, 696, 745 P.2d 515 (1987), *review denied*, 110 Wn.2d 1007 (1988). Furthermore, the record confirms that Sims was already in possession of Eddy's car keys and the money from her purse before he assaulted her. Hence, the blows, as well as Sims' choking of Eddy and his threats to break her neck, were gratuitous and distinguished this assault from a typical assault committed during a burglary. We therefore conclude that the record before the sentencing court supported its finding that Sims' assault of Eddy was perpetrated with deliberate cruelty.

Affirmed.

GROSSE, C.J., and COLEMAN, J., concur.

Review denied at 120 Wn.2d 1028 (1993).