IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32232-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID EMORY MANLOVE, | ) | OPINION PUBLISHED IN PART |
| | ) | |
| Appellant. | ) | |

FEARING, J. — RCW 9.94A.535(3)(a) allows a sentencing enhancement if a jury finds an aggravating factor that "[t]he defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim." David Manlove argues that this enhancement may not apply to a property crime, and, in particular, to burglary. We disagree and affirm his sentence.

## FACTS

In 2005, Paula Parker and her then-husband purchased a remote cabin on forty acres in Stevens County, Washington. The couple became acquainted with their neighbor, David Manlove, whose home lay a half mile from Parker's cabin. As neighbors, Manlove once helped the Parkers install a wind turbine, and Paula Parker would stop at Manlove's residence on her way to town to ask if he needed anything.

Paula Parker divorced in 2011, and she retained sole custody of the cabin. Parker and Manlove occasionally joined one another at each other's homes for dinner. The two enjoyed a pastoral, idyllic, and platonic relationship until . . .

On April 13, 2011, the Spokane County Superior Court ordered David Manlove into involuntary inpatient treatment for up to fourteen days at Eastern State Hospital. The order barred Manlove from possessing a firearm. The order also read that counsel represented Manlove and Manlove agreed to the order. On April 22, 2011, the Spokane County Superior Court sent a Notice of Ineligibility to Possess a Firearm to the Department of Licensing. Following this involuntary treatment, David Manlove returned to his Stevens County home.

Paula Parker went on vacation from June 19 to July 2, 2013 and returned to her cabin the morning of July 3. Once inside her home, Parker found pictures of her children torn and lying on her kitchen table. The pictures came from a box that Parker stored under her bed. A rocking chair, which usually sat next to Parker's bed, rested at the top of the stairs. The butt of a thick hand-rolled cigarette, recognized by Parker to be Manlove's cigarette, lay in an ashtray. A frightened Paula Parker left her home, drove to a nearby campground, and called the sheriff.

Stevens County Sheriff Deputy David Baskin responded to Paula Parker's July 3 emergency call. Parker met Baskin at the cabin. Parker told Deputy Baskin that she suspected David Manlove of the mischief, but remained reluctant of accusing Manlove of

2

the crime because she was not sure of his involvement. While Parker spoke with Deputy Baskin outside her cabin, Manlove drove by but did not stop. Beginning on July 3, Paula Parker stayed with friends.

Paula Parker returned to her cabin home on July 7, 2013. As Parker approached her home, she noticed a hole cut into a large tree and eight of eleven cabin windows smashed. The front door was open. At trial, Paula Parker described, while showing photographs to the jury, the mayhem she discovered in her living room on July 7:

> This is my stereo that should have been in this corner on top of a shelf. This is my couch on top of everything I own that would have been up against that back window. And—and these are all books that came off a shelf that's right here. The Rubbermaid tub was full of—some of this stuff and underneath that couch. There's the other half of my stereo. There's part of my sewing machine. The rest of it is books that were torn in half and covers torn off it and pages torn up and puzzles thrown everywhere and food and clothing and tools and I can't even begin to tell you what all because it was pretty much my home.

Report of Proceedings (RP) at 129. Parker continued:

> That is a knitting needle that was poked in the seat of my reclining chair. I've—I found them poked in the seat, in the back of it. That's my couch turned upside down with all of my stuff on it. There's a multitude of glass. There's my wood stove that was broke. More glass. Anything that was glass or mirror was broke and that is in my back bedroom. There's the back window that was broke out and this is the bathroom. That was an old window that had twenty-eight panes in it. All of the windows broke out. The mirrors were broke off the walls, the tall mirror, all of it. And that's the kitchen and back end of my front room with just everything just stacked on top of everything and this is going up the stairs to my bedroom. And this is the floor in my upstairs bedroom and this is all of the stuff that was under my bed. Just hatchet holes, more hatchet holes, more broken windows. Monster holes pounded in the wall. Anything that was glass or

mirror was pretty much destroyed and broken. It's just chaos.

RP at 139-40. The home suffered hatchet holes in the walls. The destroyed woodstove served as the cabin's only source of heat. The intruder shredded Paula Parker's medical records, high school diploma, and college degree. Parker kept her mother's ashes in an urn, and the prowler dumped the ashes onto the floor.

After surveying the damage at Paula Parker's cabin on July 8, 2013, Stevens County Sergeant Brad Manke, Sergeant Timothy Blackman, and Deputy William Britton traveled to David Manlove's home. When asked why he damaged Paula Parker's home, Manlove responded, "It's my mountain." RP at 242. When arrested, Manlove repeated several times: "It's my mountain so there's no crime." RP at 243.

Law enforcement obtained two search warrants for David Manlove's home. Officers seized from inside Manlove's home many items that belonged to Paula Parker, including a hatchet, a chainsaw, a veil for a belly dancing costume, a mortar and pestle, journals, and jewelry. Officers also found marijuana plants and a rifle.

## PROCEDURE

The State of Washington charged David Manlove with residential burglary, unlawful possession of a firearm in the second degree, possession of more than forty grams of marijuana, possession of stolen property in the third degree, and malicious mischief in the first degree. The State further alleged that Manlove committed residential

4

burglary with deliberate cruelty in violation of RCW 9.94A.535(3)(a). The trial court

found Manlove competent to stand trial after an evaluation by Eastern State Hospital.

At the close of trial, the trial court instructed the jury that:

> "Deliberate cruelty" means gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself, and which goes beyond what is inherent in the elements of the crime or is normally associated with the commission of the crime.

Clerk's Papers (CP) at 177. The jury found David Manlove guilty as charged. The jury

also found by special verdict that Manlove's conduct during the commission of

residential burglary manifested deliberate cruelty to the victim.

The trial court sentenced David Manlove to 120 months of incarceration for

committing residential burglary with deliberate cruelty. The court imposed shorter

sentences for the remaining four counts, and ordered all five counts to run concurrently.

## LAW AND ANALYSIS

RCW 9.94A.535, a portion of the 1981 Sentencing Reform Act (SRA), permits a

trial court to sentence one convicted of a crime either below or above the standard range

imposed under sentencing guidelines. The statute lists mitigating circumstances that may

lower the sentence and aggravating factors that may raise the sentence. We quote that

portion of RCW 9.94A.535 at issue, subsection (3)(a), plus other portions that assist us in

interpreting subsection (3)(a):

> The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that

there are substantial and compelling reasons justifying an exceptional sentence. Facts supporting aggravated sentences, other than the fact of a prior conviction, shall be determined pursuant to the provisions of RCW 9.94A.537.

. . . .

(3) Aggravating Circumstances—Considered by a Jury—Imposed by the Court

Except for circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range. Such facts should be determined by procedures specified in RCW 9.94A.537.

(a) The defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim.

. . . .

(c) The current offense was a violent offense, and the defendant knew that the victim of the current offense was pregnant.

. . . .

(e) The current offense was a major violation of the Uniform Controlled Substances Act, chapter 69.50 RCW (VUCSA), related to trafficking in controlled substances, which was more onerous than the typical offense of its statutory definition: The presence of ANY of the following may identify a current offense as a major VUCSA:

. . . .

(h) The current offense involved domestic violence, as defined in RCW 10.99.020, or stalking, as defined in RCW 9A.46.110, and one or more of the following was present:

(i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time;

. . . .

(u) The current offense is a burglary and the victim of the burglary was present in the building or residence when the crime was committed.

. . . .

(dd) The current offense involved a felony crime against persons, except for assault in the third degree pursuant to RCW 9A.36.031(1)(k), that occurs in a courtroom, jury room, judge's chamber, or any waiting area or corridor immediately adjacent to a courtroom, jury room, or judge's chamber.

The legislative intent of the SRA's exceptional sentence provision is to authorize courts to tailor the sentence, as to both the length and the type of punishment imposed, to the facts of the case, recognizing that not all individual cases fit the predetermined structuring grid. *State v. Davis*, 146 Wn. App. 714, 719-20, 192 P.3d 29 (2008).

David Manlove contends the aggravating factor of deliberate cruelty under RCW 9.94A.535(3)(a) is not applicable to residential burglary. Manlove does not argue that the facts are insufficient to support a finding of deliberate cruelty, but rather that the aggravating factor does not apply as a matter of law to a property crime. Therefore, we do not discuss what constitutes "deliberate cruelty."

We must read and reread RCW 9.94A.535(3)(a) to discern if the Washington State Legislature wished the deliberate cruelty aggravator to apply to property crimes, such as residential burglary. When interpreting a statute, this court's fundamental objective is to determine and give effect to the intent of the legislature. *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012). When possible, this court derives legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013).

We conclude the legislature intended the deliberate cruelty sentence enhancement to be available for property crimes for two reasons. First, when the legislature desired to

limit the application of an aggravating factor to certain offenses, it expressly provided that limitation in the statute. For example, the legislature limited the aggravating factor for a pregnant victim to instances when "[t]he current offense was a violent offense." RCW 9.94A.535(3)(c). The legislature likewise limited the aggravating factor for trafficking controlled substances to instances when "[t]he current offense was a major violation of the Uniform Controlled Substances Act, chapter 69.50 RCW." RCW 9.94A.535(3)(e). And the legislature limited the aggravating factor for ongoing abuse to instances when "[t]he current offense involved domestic violence, as defined in RCW 10.99.020, or stalking, as defined in RCW 9A.46.110." RCW 9.94A.535(3)(h)(i). The legislature could have limited the application of RCW 9.94A.535(3)(a) to crimes against a person if it so desired.

Second, RCW 9.94A.535(3)(u) allows a sentence enhancement when the current offense is a burglary and the victim of the burglary was present in the building or residence when the crime was committed. This subsection of the statute shows a legislative intent to allow an exceptional sentence in some property crimes and confirms that some of the other enhancements could apply to crimes such as burglary. In turn, no subsection of RCW 9.94A.535 precludes an exceptional sentence under circumstances when the victim of the burglary is away from the building.

David Manlove committed residential burglary in violation of RCW 9A.52.025(1), which provides: "A person is guilty of residential burglary if, with intent to commit a

8

crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." As this court noted in *In re the Postsentence Review of Childers*, because residential burglary is not listed in RCW 9.94A.411, which enumerates crimes against persons toward guiding prosecutorial discretion, the charge does not qualify as a crime against a person. 135 Wn. App. 37, 40, 143 P.3d 831 (2006). Pointing to *Childers*, David Manlove argues that the aggravating factor of "deliberate cruelty" is limited to only crimes against a person. Nevertheless, the reasoning behind *Childers* does not support this conclusion, and no authority supports such a limitation. *Childers* involved whether the defendant could receive community custody.

David Manlove emphasizes the word "to" in RCW 9.94A.535(3)(a)'s phrase "manifested deliberate cruelty to the victim" to argue that the cruelty must be directed to the victim. He argues that he directed his cruelty to the property he destroyed or the home, not to Paula Parker. We reject this argument because the ordinary person and the English language does not consider property to be the subject of cruelty. A torturer directs cruelty to human beings and other sentient beings, not to inanimate objects. When construing a statute, we consider the natural and contextual meanings that attach to a term, giving words their usual, ordinary, and commonly accepted meaning. *Greenhalgh v. Dep't of Corr.*, 180 Wn. App. 876, 884, 324 P.3d 771, *review denied*, 337 P.3d 326 (2014).

9

No previous case expressly holds that the deliberate cruelty enhancement is available for a burglary or property crime. Nevertheless, we find support in three Washington decisions: *State v. Goodman*, 108 Wn. App. 355, 30 P.3d 516 (2001); *State v. Tierney*, 74 Wn. App. 346, 872 P.2d 1145 (1994); and *State v. Sims*, 67 Wn. App. 50, 834 P.2d 78 (1992). In each case, the defendant received a deliberate cruelty enhancement for a property crime.

In *State v. Goodman*, Lee Goodman torched his estranged wife's home, killing her pet dog in the fire. Goodman pled guilty to first degree arson, residential burglary, violating a protection order, and killing a pet. The sentencing court imposed an exceptional sentence of 360 months. *Goodman*, 108 Wn. App. at 357. This court affirmed an exceptional sentence based, in part, on deliberate cruelty.

In *State v. Tierney*, the court upheld an exceptional sentence based on deliberate cruelty where the underlying conviction was arson, a property crime. The jury also found Michael Tierney guilty of residential burglary. Tierney burned his former love's home out of obsession for her. *Tierney*, 74 Wn. App. at 348. He also engaged in a pattern of harassment against the girlfriend and her parents.

In *State v. Sims*, the court upheld a deliberate cruelty enhancement upon a conviction for first degree burglary. Michael Sims entered the home of a 78-year-old-woman, took money and car keys from the woman, and slapped her. *Sims*, 67 Wn. App. at 52. Although Sims assaulted the woman, he was charged only with burglary.

10

CONCLUSION

We hold that, under appropriate circumstances, the deliberate cruelty aggravating factor may apply to a property crime. We affirm David Manlove's convictions and sentence, including the enhancement for deliberate cruelty.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.

STATEMENT OF ADDITIONAL GROUNDS (SAG)

In his SAG, David Manlove asserts four arguments. Manlove first challenges his conviction for residential burglary. Manlove cites *State v. Mevis*, 53 Wn.2d 377, 333 P.2d 1095 (1959) for the proposition that mere proof of possession of recently stolen property cannot in itself establish a prima facie case of larceny or burglary. But here, Paula Parker identified many of the items found in Manlove's home as belonging to her. The intruder used a hatchet to inflict much of the damage, which police found at Manlove's home. Parker recognized the cigarette butt as from Manlove's cigarette. Therefore, this challenge fails.

David Manlove next challenges his conviction for unlawful possession of a firearm. The instructions to the jury referenced involuntary commitment for "mental health *treatment*." CP at 155. Manlove argues he was evaluated, but never treated, and that only receiving treatment would bar him from possessing a firearm. Regardless, this

11

argument belies exhibits 46 and 47, which show that Manlove was committed to Eastern State Hospital for "[i]nvoluntary inpatient treatment." Ex. P-46, at 1.

David Manlove also challenges the reinstating of his sentence in "case # 11-1-00090-1." SAG at 10. Based on the conduct at Paula Parker's home, the trial court determined that Manlove violated the terms of a 2011 suspended sentence. Defense counsel expressly waived any objection to that determination. Manlove himself did not object. Therefore, Manlove waived this assignment of error. RAP 2.5(a).

Finally, David Manlove argues that being tried in a jumpsuit denied him a fair trial. At sentencing, the trial court commented: "Now, the contempt that you show to the Court has—has been consistent by your wearing jail clothes, not playing the game." RP at 408. This comment indicates that Manlove refused to wear anything but the jumpsuit. Regardless, because the record does not show that Manlove objected to wearing prison garb at trial, the issue is waived. *United States v. Rogers*, 769 F.2d 1418, 1423 (9th Cir. 1985).

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.