[No. 32113-7-I.    Division One.    May 23, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL
C. TIERNEY, *Appellant.*

*Lise Ellner* of *Department of Assigned Counsel,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Craig Peterson* and *Peter Goldman, Deputies,* for respondent.

PEKELIS, A.C.J. — Michael C. Tierney (Tierney) appeals the imposition of a 68-month exceptional sentence for a first degree arson conviction, arguing that: (1) the "real facts" doctrine precludes imposition of an exceptional sentence based on facts that also establish elements of other uncharged crimes; and (2) the aggravating factor of deliberate cruelty cannot be relied on to support an exceptional sentence for first degree arson because it has already been calculated into the standard sentencing range. We disagree and affirm.

"Fatal attraction" most appropriately characterizes the circumstances leading up to Tierney's convictions for arson and burglary. In 1986, Susan Okonek (Okonek) met Tierney during a vacation in Hawaii. Over the period of a few days,

Okonek spent several hours with him. After her vacation, Okonek and Tierney remained in telephone contact. In March 1987, Tierney traveled from Hawaii to visit Okonek at her parents' home in Tacoma, Washington. Okonek cut the visit short after only 1 day when Tierney became overly possessive toward her.

Tierney telephoned Okonek a week later. Despite her request to stop, Tierney continued to call. In a spring 1987 telephone conversation, Tierney threatened to kill her. Frightened, Okonek changed her phone number. Undeterred, Tierney continued writing to Okonek.

During 1987 and 1988, Tierney made a series of phone calls to Okonek's parents in which he used vituperative language and threatened the lives of Okonek and her father. Tierney stated in one phone message that Okonek was "growing a dick" and referred to Okonek as a "cumsucker". Phone calls of a similar nature resumed in 1991. During one call, which Mr. Okonek received, Tierney threatened to burn down their house.

In July 1991, Tierney managed to reach Okonek again. Because Okonek's number was unlisted, Tierney placed an emergency call via the operator to tell Okonek that her father had been involved in an accident. When Okonek called the number the operator had given her, she reached Tierney. In the course of the conversation, Tierney stated that he wanted to marry her and that if she ever married, "I will kill your husband". Despite Okonek's request that he leave her and her family alone, Tierney left approximately three messages via the operator for her to call a "Michael Okonek".

On August 29, 1991, Okonek, a flight attendant, left for a 2-day trip. Upon returning, she found her porch light out, her front door unlocked, and her apartment ransacked and burned. The only items missing were her address book and a photograph of herself. "Susan Okonek is a cumsucker" was inscribed on the wall of her apartment. Within a day or so of the fire, Okonek found a business card in her parents' mailbox. "Michael was here" was written on the back. In March

1992, Tierney sent one letter to Okonek and another to her parents. The trial court characterized one letter as being of an "obscene nature".[1]

Tierney was charged by amended information with arson in the first degree pursuant to RCW 9A.48.020(1) and residential burglary pursuant to RCW 9A.52.025. At trial, Paul Renaud and Rosilee Hernandez, employees of Okonek's apartment complex, both testified to having observed Tierney loitering outside Okonek's apartment the day before the fire. Hernandez testified that when she questioned Tierney about his presence at the building, he replied that he was looking for his brother. She called the police when he continued to loiter.

Max Caulfield, a private investigator, testified that Tierney had hired him to find Okonek. When all the information he uncovered about Okonek led to her parents' home, Caulfield suggested contacting Okonek's parents so that they could inform Okonek that Tierney was trying to reach her. Displeased by the suggestion, Tierney threatened to kill Caulfield and his "whole fucking family".

The jury convicted Tierney as charged. At sentencing, the court imposed a standard range sentence for the residential burglary conviction, but imposed a 68-month exceptional sentence for the first degree arson conviction. Tierney's standard range was 26 to 34 months. In imposing the exceptional sentence, the trial court made the following finding of fact:

> The substantial and compelling reasons for departing from the presumptive sentencing range in this case are:
>
> The defendant acted with deliberate cruelty in continuing to write, to call, and to threaten both Susan Okonek and her parents despite Susan Okonek's repeated requests to the defendant that he leave her alone. His threats to kill her and her family if she does not marry him have destroyed her peace of mind and that of her family. These additional acts constitute intentional infliction of major emotional distress on the Okonek family and on Susan Okonek and are not contained or included in the charged offenses. The obscene nature of the language . . . contained in the March, 1992, letter to them was

---

[1]Neither letter has been made part of the record on appeal. However, we note that Tierney does not object to the trial court's characterization.

deliberate and unnecessary cruelty to them after the commission of these charged crimes. See RCW 9.94A.390[.]

Tierney appeals.

I

Tierney first contends that the trial court violated the "real facts" doctrine when it imposed an exceptional sentence for first degree arson based upon its finding of deliberate cruelty.

■ If the offense involves substantial and compelling circumstances, an exceptional sentence is appropriate. *State v. Hammond*, 121 Wn.2d 787, 794, 854 P.2d 637 (1993); *see* RCW 9.94A.120(2). We review the legal sufficiency of the trial court's reasons as a matter of law. *Hammond*, 121 Wn.2d at 794; *see* RCW 9.94A.210(4)(a).

■ In determining what evidence may be considered in imposing a sentence, the trial court must be mindful of the "real facts" doctrine, which is found in RCW 9.94A.370(2):

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. . . . *Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range* except upon stipulation or when specifically provided for in [RCW 9.94A.390(2)].

(Italics ours.) RCW 9.94A.370(2). The real facts doctrine reflects the principle that a sentence should be based only on "the actual crime of which the defendant has been convicted, his or her criminal history, and the circumstances surrounding the crime." *State v. Houf*, 120 Wn.2d 327, 333, 841 P.2d 42 (1992). "Defendants will be held accountable for what they have been convicted of, but not for crimes that the prosecution either could not or chose not to prove." (Italics omitted.) *State v. McAlpin*, 108 Wn.2d 458, 466, 740 P.2d 824 (1987) (citing David Boerner, *Sentencing in Washington* § 9.16, at 9-49 to 9-50 (1985)).

Tierney argues that the facts upon which the trial court based its finding of deliberate cruelty constitute "real facts" that cannot be relied on to impose an exceptional sentence

because they make up elements of the additional uncharged crimes of harassment or telephone harassment. Thus, he contends that the trial court erred in relying on those facts to impose an exceptional sentence.

It is undisputed that the facts upon which the trial court relied to impose an exceptional sentence also constitute elements of other uncharged crimes. However, we do not believe that adopting the mechanistic approach to the real facts doctrine advocated by Tierney would be consistent with the purpose of the Sentencing Reform Act of 1981 (SRA) as a whole. We therefore conclude that, at sentencing, the trial court is not prohibited from considering those facts closely connected to the circumstances underlying the charged offense simply because they also establish elements of additional uncharged crimes.

In *State v. Houf, supra*, our Supreme Court, in addressing the real facts doctrine, recognized a distinction between those facts closely connected to the current offense and those facts wholly independent of the current offense. The court held that the trial court erred in imposing an exceptional sentence for unlawful delivery of a controlled substance based upon the fact that the defendant had lied during his trial testimony. The court reasoned that the defendant's lying in his trial testimony could not be considered "circumstance[s] surrounding the charged offense" under RCW 9.94A.390(2).[2] *Houf*, at 331-34. As a result, the court reasoned that the trial court's reliance on the defendant's perjury to enhance his sentence violated the real facts doctrine, which "does not allow facts which establish the elements of crimes *completely unconnected to those charged* to be considered in meting out an exceptional sentence." (Italics ours.) *Houf*, at 334.

*Houf* is consistent with other Washington cases in which the real facts doctrine has been applied to prohibit the imposition of an exceptional sentence based on facts entirely independent from the crime of conviction. *See, e.g., Ham-*

---

[2]RCW 9.94A.390(2) contains the statutory aggravating factors that may be considered when imposing an exceptional sentence for the "current offense".

*mond* (imposition of exceptional sentence for indecent liberties based on facts that establish elements of bail jumping violates the real facts doctrine) and *State v. Henshaw*, 62 Wn. App. 135, 813 P.2d 146 (1991) (imposition of exceptional sentence for child molestation based on facts that establish elements of tampering with a witness violates the real facts doctrine).

■ We hold that the real facts doctrine does not preclude reliance on facts that establish elements of additional uncharged crimes to enhance a sentence when those facts are part and parcel of the current offense. The real facts doctrine only bars reliance on those facts wholly unrelated to the current offense or those facts which would elevate the degree of crime charged to a *greater* offense than charged.[3]

■ Allowing reliance on facts that are closely connected to the current offense, but which do not elevate the degree of crime charged to a greater offense, has the salutary effect of retaining the overarching objective of the exceptional sentence process. *See State v. Coyle*, 95 Wn.2d 1, 5, 621 P.2d 1256 (1980) ("[i]n interpreting a statute, the court seeks to foster the purposes for which it was enacted"). Our holding ensures that the defendant may properly be held accountable for those circumstances that are not factored into the standard range and are unique to the commission of the particular offense charged. *See State v. Handley*, 115 Wn.2d 275, 282, 796 P.2d 1266 (1990). At the same time, we do no violence to the policy underlying the real facts doctrine because the defendant is not punished "for a wholly *unrelated* crime with which he [or she] has never been charged, much less convicted." (Italics ours.) *Houf*, 120 Wn.2d at 333.

The facts of this case are so closely connected to the underlying offense that they hardly merit discussion. In

---

[3]*See State v. Sly*, 58 Wn. App. 740, 749, 794 P.2d 1316 (1990), in which the trial court imposed an exceptional sentence for second degree robbery based on the fact that the defendant had struck a victim with a rock during the commission of the offense. This court held that this violated the real facts doctrine because the rock throwing, although part of the trial testimony, was expressly used by the sentencing judge to elevate the *degree* from second degree to first degree robbery. *Sly*, at 750.

fact, the challenged facts were a necessary part of the evidence admitted during the trial itself. At oral argument, defense counsel conceded that the evidence of Tierney's threats, the inscription on the wall of Okonek's apartment, and the photograph and address book taken from Okonek's apartment were used at trial to prove Tierney's identity. If facts that are a part of the "immediate context" of the charged offense are allowed in evidence at trial to prove guilt or innocence, it would be odd not to permit the sentencing court to rely on these facts in deciding the appropriate punishment. *See State v. Tharp*, 27 Wn. App. 198, 204, 616 P.2d 693 (1980) (holding that evidence of other crimes is admissible " '[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place . . .' " (quoting Edward W. Cleary, *McCormick on Evidence* § 190, at 448 (2d ed. 1972)), *aff'd*, 96 Wn.2d 951, 637 P.2d 961 (1981).

Moreover, the first sentence of RCW 9.94A.370(2) prohibits reliance on information *other* than what "is . . . admitted, acknowledged, or proved in a trial . . .". Clearly, the trial court considered "no more information" than had been "proved in a trial" given that the majority of the conduct relied on at sentencing had been elicited at trial. Furthermore, Tierney's threats and unwanted phone calls and letters, both before and after the trial, are closely connected to the arson because his obsession with Okonek provided the motive for all of his offensive conduct toward her and her parents.[4] We conclude that the conduct relied on by the sentencing judge to enhance Tierney's sentence was an integral part of the circumstances

---

[4]We decline to follow *State v. Ratliff*, 46 Wn. App. 466, 731 P.2d 1114 (1987), insofar as it can be read as holding that the trial court can never consider a defendant's posttrial conduct when imposing an exceptional sentence. If facts that establish elements of uncharged offenses are closely connected to circumstances underlying the charged offense, we see no rational basis for a distinction between relevant pretrial and posttrial conduct.

However, even if posttrial conduct were excluded, we would not reverse and remand for resentencing as we are convinced that the trial court would have imposed the same sentence absent consideration of Tierney's posttrial conduct. *See, e.g., State v. Sanchez*, 69 Wn. App. 255, 263, 848 P.2d 208, *review denied*, 122 Wn.2d 1007 (1993).

surrounding the arson, and the use of this conduct did not impermissibly violate the real facts doctrine.

## II

Tierney next contends that the trial court erred in relying on the aggravating factor of deliberate cruelty in imposing an exceptional sentence, arguing that deliberate cruelty has already been calculated into the standard sentencing range for first degree arson.

When imposing an exceptional sentence, the trial court may consider whether:

> The defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim.[5]

RCW 9.94A.390(2)(a).

■ Although the trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in computing the presumptive range for the offense, it may base an exceptional sentence on other factors, "including those the trial court itself considered in establishing the elements of the *particular* offense." *State v. Chadderton*, 119 Wn.2d 390, 395, 832 P.2d 481 (1992). *See, e.g., State v. Garibay*, 67 Wn. App. 773, 779, 841 P.2d 49 (1992) (upholding, as a matter of law, an exceptional sentence for first degree rape of a child based on the victim's vulnerability due to extreme youth, even though age is an element of the offense).

In short, the trial court cannot rely on those factors inherent in the crime that "do not distinguish the defendant's behavior from that inherent in all crimes of that type". *Chadderton*, at 396. Thus, the issue is whether Tierney's actions, upon which the trial court based its finding of deliberate cruelty, were significantly more serious or egregious than those typically associated with first degree arson.

Tierney relies on *State v. Pockert*, 53 Wn. App. 491, 497, 768 P.2d 504 (1989) for the proposition that a finding of deliberate cruelty cannot justify an exceptional sentence for

---

[5]"Deliberate cruelty consists of gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself." *State v. Scott*, 72 Wn. App. 207, 214, 866 P.2d 1258 (1993).

first degree arson because "malice" is an element of the offense.[6]

In *Pockert*, the defendant and the victim had been involved in a 3-month romantic relationship. *Pockert*, at 493. Approximately 1 month after the breakup, Pockert set fire to the victim's home. *Pockert*, at 493. The trial court imposed an exceptional sentence based on a finding of deliberate cruelty stemming from the fact that Pockert had set the fire as a way of "getting even" with the victim for ending the relationship. *Pockert*, at 497. On appeal, the court held that deliberate cruelty could not justify an exceptional sentence for first degree arson, reasoning that setting the fire to "get even" constituted conduct falling within the definition of "maliciously", which is an element of arson in the first degree. *Pockert*, at 497.

■ The facts in *Pockert* are clearly distinguishable from those presented here. Although Tierney set the fire out of obsession with Okonek, this was not the principal basis for the trial court's imposition of an exceptional sentence. Instead, the trial court focused on Tierney's ongoing harassment of Okonek and her parents both before and after the arson. Tierney's retaliatory conduct greatly exceeded the conduct at issue in *Pockert* both in terms of quantity and quality. For instance, in the course of committing the arson and burglary, which were charged separately, Tierney not only stole personal items belonging to Okonek, but he inscribed a defaming and derogatory phrase about her on a wall of her apartment. These actions, together with Tierney's threats to kill Okonek and her family, his threats to set fire to her parents' home, and his unwanted phone calls and letters, containing vituperative language, constitute "deliberate cruelty" of such an egregious nature that it clearly is

---

[6]RCW 9A.48.020 provides, in relevant part:

"(1) A person is guilty of arson in the first degree if he knowingly and *maliciously*:

"(a) Causes a fire or explosion which . . ..

"Maliciously" is defined in RCW 9A.04.110(12) as "shall import an evil intent, wish, or design to vex, annoy, or injure another person."

not encompassed within the "malice" element of first degree arson.

In conclusion, the trial court properly relied on Tierney's ongoing harassment of Okonek and her parents both before and after the conviction as support for an exceptional sentence based on deliberate cruelty.

Affirmed.

GROSSE and AGID, JJ., concur.