[No. 25849-8-II.  Division Two.  September 7, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. LEE CONRAD GOODMAN, *Appellant*.

356

*Linda J. King*, for appellant (appointed counsel for appeal).

*Gerald A. Horne, Prosecuting Attorney*, and *Michelle Luna-Green, Deputy*, for respondent.

ARMSTRONG, C.J. — After years of domestic abuse culminated in a heated verbal and physical attack, Lee Goodman's wife obtained a protection order against him and the State filed harassment and assault charges. A few months later, while released on bail, Goodman returned to his wife's home and burned it down, killing her pet dog, Jazz. Goodman pleaded guilty to first degree arson, residential burglary, violating a protection order, and killing a pet. The sentencing court imposed an exceptional sentence of 360 months. Goodman appeals, arguing that the charging information was insufficient for failing to state the elements of domestic violence, that the exceptional sentence was improper, and that his counsel was ineffective. We affirm.

## FACTS

Lee Goodman and his wife, Christine, met in 1979. Shortly thereafter, Goodman began serving a prison sentence for manslaughter. Goodman had killed a real estate agent whom he called out to his house when his former wife left him. The State charged Goodman with first degree murder, but he pleaded guilty to first degree manslaughter. When he got out of prison in 1985, he and Christine began living together, and they married in 1989.

Goodman inflicted emotional and physical abuse throughout the relationship. He claimed to have been involved in organized crime and to have killed many times while in prison. He threatened to kill Christine and physically assaulted her when she attempted to leave. One time, he hit her face with a handgun and threatened to kill her parents, family, and friends as she watched. Another time, he threw their cat headfirst into a brick wall, stating that he could bash her head in the same way at any time.

Goodman also came to the bank where Christine worked, threatened her, and forced her to cash checks. Christine eventually became afraid to speak at home and feared that Goodman would kill her.

In September 1998, Christine called the police after Goodman threatened to kill her and her parents. Before the police arrived, Goodman hit her on her face, beat her with the telephone, and threatened to stab her. Christine obtained a protection order, and the State filed felony harassment and first degree assault charges. Christine continued to live at their home after her husband moved out. Released on $100,000 bail, Goodman returned to the home in December 1998 and burned it down "to keep [her] from living in the house with another guy." Clerk's Papers (CP) at 19. The fire killed Christine's dog, Jazz.

Goodman pleaded guilty to first degree arson, residential burglary, violating a protection order, and killing a pet. He stated that he "did not know it was a crime to burn your own house." CP at 19. At sentencing, he admitted that he would "do it again." Report of Proceedings (RP) (Mar. 17, 2000) at 51. The sentencing court found that Goodman knew that the dog was in the house when he set the fire and killed the dog to further harm his wife emotionally. The court imposed an exceptional sentence of 360 months after finding that Goodman has no respect for the law or life, engaged in an ongoing pattern of domestic abuse, and manifested deliberate cruelty or intimidation of the victim while committing the arson.

## ANALYSIS

### I. Sufficiency of Information

■ Goodman first argues that the charging information was insufficient for failing to state the "elements" of the domestic violence definition in RCW 10.99.020(3). Goodman argues that, because his information characterized each alleged crime as "a domestic violence incident," the infor-

mation was insufficient absent a statement of the elements of domestic violence. CP at 6-8. A sufficient information states the essential elements of each charged crime so that the accused may understand the charges and prepare a defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992).

■ Goodman argues that RCW 10.99.020(3), which defines "domestic violence" and other related terms, provides the "elements" of domestic violence. The definition provides a nonexclusive list of crimes that are domestic violence crimes "when committed by one family or household member against another." RCW 10.99.020(3). But the legislature specifically stated that the purpose of the domestic violence act, chapter 10.99 RCW, was not to establish new crimes, finding that "the existing criminal statutes are adequate to provide protection for victims of domestic violence." RCW 10.99.010. Thus, the Act "created no new crimes but rather emphasized the need to enforce existing criminal statutes in an evenhanded manner to protect the victim regardless of whether the victim was involved in a relationship with the aggressor." *Roy v. City of Everett*, 118 Wn.2d 352, 358, 823 P.2d 1084 (1992); *see also* RCW 10.99.010.

We hold that the charging information here was sufficient because domestic violence is not a separate crime with elements that the State must prove. Identifying a crime as a domestic violence crime "does not itself alter the elements of the underlying offense; rather, it signals the court that the law is to be equitably and vigorously enforced." *State v. O.P.*, 103 Wn. App. 889, 892, 13 P.3d 1111 (2000). Thus, Goodman's information was not insufficient for failing to state the "elements" of domestic violence.

## II. Exceptional Sentence

Goodman next argues that the trial court erred by imposing an exceptional sentence for first degree arson based on impermissible aggravating factors of future dan-

gerousness and domestic violence. He also complains that the length of his sentence is clearly excessive.

## A. Future Dangerousness

Goodman contends that the trial court improperly based the exceptional sentence on future dangerousness. Future dangerousness is a nonstatutory aggravating factor that applies only where the defendant's crime is a sexual offense. *State v. Halgren*, 137 Wn.2d 340, 346, 971 P.2d 512 (1999). Goodman argues that the trial court's finding that he has "no respect for the law or for life" is the same as finding future dangerousness. CP at 86.

█ While a court may not rely on concern for public safety as an aggravating factor, it may consider the defendant's extraordinary disregard for the law. *See State v. Butler*, 75 Wn. App. 47, 54-55, 876 P.2d 481 (1994) (upholding an exceptional sentence based on defendant's rapid recidivism); *State v. George*, 67 Wn. App. 217, 224, 834 P.2d 664 (1992) (upholding an exceptional sentence based on defendant's commission of crimes while on parole), *overruled on other grounds by State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995). Here, Goodman violated a protection order and release conditions by going to his wife's house and burning it down. We hold that the sentencing court did not improperly rely on future dangerousness as an aggravating factor. Similar to rapid recidivism or committing additional crimes while on parole, violating a protection order and release conditions exhibited extraordinary disregard for the law.

## B. Domestic Violence

█ Goodman also contends that the trial court improperly considered domestic violence as an aggravating factor under RCW 9.94A.390(2)(h). A trial court may consider domestic violence as an aggravating circumstance if the offense involved domestic violence, as defined in RCW 10.99.020(3), and the defendant either (1) committed the offense as "part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by

multiple incidents over a prolonged period of time," (2) committed the offense in the presence of minor children, or (3) manifested deliberate cruelty or intimidation of the victim while committing the offense. RCW 9.94A.390(2)(h). Here, the trial court relied on the first and third factors.

Goodman initially argues that the arson did not involve domestic violence as defined in RCW 10.99.020. He maintains that the crime was not against his wife but against "their jointly-owned property." Appellant's Br. at 31. Goodman concedes, however, that he burned the house because he was jealous and wanted to "keep his wife from living in the house with another guy." CP at 19. Further, the trial court found that Goodman knew Jazz was in the house when he set the fire and that he killed the dog to hurt his wife emotionally. Thus, even if we accept the argument that destroying community property is not a crime against the co-owner spouse,[1] Goodman did more than destroy community property. Intending to cause emotional harm, he destroyed her home and killed her pet. Under these circumstances, we hold that Goodman's wife "sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(43). As such, she was a victim of the arson.

Goodman further argues that the arson was not against his wife because she suffered no personal harm. He points to the nearly $300,000 in insurance proceeds that she collected and her testimony that she was happier with the money than with the house. But a defendant does not avoid criminal liability merely because the victim recovers the loss. Similarly, Goodman committed the arson against his wife even though she suffered no physical harm and insurance covered the loss. *See State v. Ewing*, 102 Wn. App. 349, 7 P.3d 835 (2000) (upholding an order to pay the insurance company restitution of benefits it paid to the

---

[1] Goodman points to *State v. Coria*, 105 Wn. App. 51, 17 P.3d 1278 (2001), where we held that a spouse who destroys community property does not destroy the property of another as required by the malicious mischief statute. *Coria* does not apply. The definition of a domestic violence victim is broader than the definition of one whose property is destroyed under the malicious mischief statute.

defendant's estranged wife after he burned their home). Thus, we hold that domestic violence was a permissible aggravating factor.

■ Goodman contends that even if domestic violence were a permissible aggravating factor, the trial court improperly found that the arson was "part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time." RCW 9.94A.390(2)(h)(i). He argues that the court violated the "real facts" doctrine of RCW 9.94A.370(2), which provides that a sentencing court may base the defendant's sentence only on the facts of the present crime established at trial or sentencing. The court may not base an exceptional sentence on facts that establish the elements of a more serious crime or additional crimes "except upon stipulation or when specifically provided for in RCW 9.94A.390(2)(d), (e), (g), and (h)." RCW 9.94A.370(2). Here, the real facts doctrine does not apply because RCW 9.94A.390(2)(h) specifically allows the court to consider past incidents of psychological, physical, or sexual abuse in departing from the standard sentence range.

■■ Goodman also argues that the trial court erred by finding that his conduct while committing the arson manifested deliberate cruelty or intimidation of the victim under RCW 9.94A.390(2)(h)(iii). When a defendant challenges whether the sentencing court's factual findings support its reasons for imposing an exceptional sentence, the appellate court independently decides whether the trial court's reasons justify the sentence as a matter of law. RCW 9.94A.210(4)(a); *State v. Pryor*, 115 Wn.2d 445, 450, 799 P.2d 244 (1990). Deliberate cruelty is "gratuitous violence, or other conduct which inflicts physical, psychological or emotional pain as an end in itself." *State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989). And the cruelty must be " 'of a kind not usually associated with the commission of the offense in question.' " *State v. Payne*, 45 Wn. App. 528, 531, 726 P.2d 997 (1986) (quoting *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981)).

Divisions One and Three of this Court have each considered whether a defendant manifested deliberate cruelty while committing an arson. Division Three reversed an exceptional sentence in *State v. Pockert*, 53 Wn. App. 491, 768 P.2d 504 (1989). Pockert burned his ex-girl-friend's house about a month after their relationship ended. *Pockert*, 53 Wn. App. at 493. The trial court imposed an exceptional sentence based in part on its conclusion that Pockert manifested deliberate cruelty while committing the arson because he was "extremely agitated because of the breakup of the relationship and was 'getting even' with [the victim]." *Pockert*, 53 Wn. App. at 497. Division Three held that Pockert's vengefulness was not deliberate cruelty because the malice element of arson encompasses " 'an evil intent, wish, or design to vex, annoy, or injure another person.' " *Pockert*, 53 Wn. App. at 497 (quoting RCW 9A.04.110(12)).

In contrast, Division One upheld an exceptional sentence based on deliberate cruelty. *State v. Tierney*, 74 Wn. App. 346, 872 P.2d 1145 (1994). Tierney and his victim met during a vacation and spent some time together. Tierney visited her after the vacation, but she ended the visit when he became overly possessive of her. Tierney proceeded to call the victim and her parents numerous times, threatening to kill them. He also threatened to burn the victim's parents' home. *Tierney*, 74 Wn. App. at 347-48. Eventually, Tierney "ransacked and burned" the victim's apartment and inscribed a defaming and derogatory phrase on her wall. He later sent obscene letters to the victim and her parents. *Tierney*, 74 Wn. App. at 348-49. Division One upheld the trial court's conclusion that Tierney manifested deliberate cruelty because of his ongoing harassment of the victim and her parents before and after the arson. The court distinguished *Pockert*, noting that "Tierney's retaliatory conduct greatly exceeded the conduct at issue in *Pockert* both in terms of quantity and quality." *Tierney*, 74 Wn. App. at 355. The court held that, unlike Pockert's conduct, the egregious nature of Tierney's conduct was clearly beyond

the scope of conduct encompassed in the malice element of first degree arson.

■ As in *Pockert*, the malice element of first degree arson encompasses Goodman's vengefulness and evil intent. But, as in *Tierney*, Goodman's conduct went beyond the malice or cruelty usually associated with arson. The trial court found that Goodman knew that Jazz was in the house and killed the dog to harm his wife emotionally. And, similar to the facts of *Tierney*, Goodman had assaulted and threatened to kill his wife and her parents in September 1998, only two months before the arson. Goodman again alleges a violation of the real facts doctrine. But, as discussed above, the domestic violence aggravating factor is an exception to the real facts doctrine. Thus, we uphold the trial court's conclusion that Goodman's conduct while committing the arson was deliberately cruel.

A majority of the panel having determined that only the foregoing portion of this opinion will be published in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Affirmed.

SEINFELD and BRIDGEWATER, JJ., concur.

Review denied at 145 Wn.2d 1036 (2002).