[Nos. 27520-1-II; 28670-0-II. Division Two. January 6, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. DANNY LAWRENCE SNAPP, *Appellant*.

*Lisa E. Tabbut*, for appellant.

*Susan I. Baur, Prosecuting Attorney*, and *Matthew W. Butler* and *Jill M. Johanson, Deputies*, for respondent.

QUINN-BRINTNALL, A.C.J. — A jury convicted Danny L. Snapp of violating a court order prohibiting him from

having contact with his wife, Tonya. RCW 10.99.040. The order was one of a series of no-contact orders entered following domestic violence incidents between the Snapps.

Snapp appeals this conviction claiming that (1) the no-contact order was invalid because it was entered when he was arrested for driving while intoxicated, a non-domestic violence offense; (2) the information failed to allege that the order was valid, the specific portion of the order he violated, or that the violation was willful; (3) the jury instructions failed to require that the jury find the no-contact order was valid beyond a reasonable doubt; and (4) the trial court improperly amended the sentence. We affirm.

## FACTS

On September 14, 2000, Snapp was charged with four crimes of domestic violence against his wife, Tonya. Initially, an emergency no-contact order prohibited Snapp from contacting Tonya. A pretrial no-contact order replaced this emergency order on September 15, 2000. Tonya completed a domestic violence victim's class and asked the court to terminate the order on September 28, 2000. The court granted Tonya's request.

On November 6, 2000, the Cowlitz County Sheriff was called to a domestic dispute at the Snapp residence. While officers were on the way to the residence, Tonya told the dispatcher that Snapp had left in his vehicle. The officers waited at the Snapp residence, but when Snapp returned, he saw a deputy sheriff and sped away.

The officers eventually captured Snapp and, finding him intoxicated, cited him for driving under the influence of alcohol (DUI). Because Snapp's arrest occurred in the course of a domestic violence investigation, the court again ordered that Snapp have no contact with Tonya and reissued a pretrial no-contact order on November 7, 2000.

On February 8, 2001, the State charged Snapp with felony violation of the November 7 no-contact order, RCW

26.50.110,[1] and interfering with reporting domestic violence, RCW 9A.36.150.[2] The State alleged that Snapp kicked and hit Tonya on February 6, 2001. A jury convicted Snapp of felony violation of a no-contact order.[3] The court initially sentenced Snapp to serve only six months in the county jail, but it amended the sentence on March 14, 2002, and included the requirement that Snapp attend a batterer's treatment class and have no contact with Tonya until allowed by the treatment provider. Snapp appeals, contesting the sufficiency of the State's proof of the validity of the no-contact order, as well as the authority of the court to amend the sentence.

## ANALYSIS

### TRIAL COURT'S AUTHORITY TO ISSUE NO-CONTACT ORDER

Snapp challenges the trial court's authority to issue a no-contact order when the crime charged is driving while

---

[1] RCW 26.50.110 provides in pertinent part that:

(1) Whenever an order is granted under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of the restraint provisions, or of a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location, or of a provision of a foreign protection order specifically indicating that a violation will be a crime, for which an arrest is required under RCW 10.31.100(2)(a) or (b), is a gross misdemeanor except as provided in subsections (4) and (5) of this section.

[2] RCW 9A.36.150 provides that:

(1) A person commits the crime of interfering with the reporting of domestic violence if the person:

(a) Commits a crime of domestic violence, as defined in RCW 10.99.020; and

(b) Prevents or attempts to prevent the victim of or a witness to that domestic violence crime from calling a 911 emergency communication system, obtaining medical assistance, or making a report to any law enforcement official.

(2) Commission of a crime of domestic violence under subsection (1) of this section is a necessary element of the crime of interfering with the reporting of domestic violence.

(3) Interference with the reporting of domestic violence is a gross misdemeanor.

[3] For reasons not clear from the record, the interference charge was dismissed.

intoxicated. Our review of the record indicates that at the time the court issued the order, Snapp had *pending* fourth degree assault, domestic violence charges under Cowlitz County District Court Cause No. 64116. The court had initially entered a no-contact order in that case but had withdrawn it at Tonya's request on September 28, 2000. On November 7, 2000, following Snapp's DUI arrest, the court reissued its order in Cause No. 64116 prohibiting any further contact with Tonya.

The court had authority to issue the no-contact order under RCW 10.99.040(2)(a), which provides, in pertinent part, that:

> Because of the likelihood of repeated violence directed at those who have been victims of domestic violence in the past, when any person *charged* with or arrested for a crime involving domestic violence is released from custody before arraignment or trial on bail or personal recognizance, the court authorizing the release may prohibit that person from having any contact with the victim

(Emphasis added.) Snapp argues that no-contact orders may be issued only at "arrest, release or arraignment" (Br. of Appellant at 23) and that CrR 3.2 does not authorize the issuance of a no-contact order. We disagree.

CrR 3.2(k)(1)[4] provides that "[t]he court ordering the release of an accused on any condition specified in this rule may at any time on change of circumstances, new information or showing of good cause amend its order to impose additional or different conditions for release." *See also State v. Rodman*, 94 Wn. App. 930, 935, 973 P.2d 1095 (1999) (rejecting argument that no-contact orders are inoperative until a defendant's release). CrR 3.2 allows the court to amend its order any time circumstances change, it receives new information, or good cause requires. Here, the trial court had authority to reissue the no-contact order in Cause No. 64116 on November 7, 2000. The order was valid in this respect.

---

[4] Formerly CrR 3.2(i)(1) (1995).

SUFFICIENCY OF THE INFORMATION

■■ Snapp argues that the information charging him was defective because it did not include what he considers three essential elements: the existence of a valid order, a willful violation, and an allegation of a violation of a specific restraint provision.[5] A charging document must include all essential elements of a crime, statutory or otherwise, "to afford notice to an accused of the nature and cause of the accusation against him." *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). The notice requirement's purpose is to allow the defendant to prepare an adequate defense to the charges. *Kjorsvik*, 117 Wn.2d at 101-02. The time at which the defendant challenges the charging document controls the standard of review for determining the charging document's validity. *State v. Borrero*, 147 Wn.2d 353, 360, 58 P.3d 245 (2002). If the challenge is made before the verdict, the language must be construed strictly. *Borrero*, 147 Wn.2d at 360. If it is made after the verdict, the language is construed liberally in favor of validity. *Borrero*, 147 Wn.2d at 360.

Snapp claims that because his counsel objected to the information before trial in his "Demand for Discovery and Objection to Charging Document," objected again orally at trial, and objected before the verdict, we must strictly construe the validity of the charging document.

The State disputes this timing analysis and argues that the more liberal review standard, applicable when the objection is brought after the verdict, should be applied in evaluating the validity of the information because the

---

[5] Count I states:

The defendant, in the County of Cowlitz, State of Washington, on or about February 06, 2001, did feloniously violate a No Contact Order pending trial, said order issued by District Court Judge David Koss, in Cowlitz County District Court Number 64116 on November 7, 2000 and/or Order Number 00-13056 on November 6, 2000, and after having acknowledged notice of such orders, did assault Tonya Snapp, a family or household member, to-wit: by hitting or kicking Tonya Snapp; contrary to RCW 10.99.010(1) [sic] and RCW 10.99[.]050 and RCW 10.99.040 and against the peace and dignity of the State of Washington.

Clerk's Papers at 1.

motion was made before the verdict, but after the State rested. Assuming without deciding that Snapp's challenge was timely, we find the information sufficient to apprise Snapp of the essential elements of the charge against him. Even construing the information strictly, the information included all essential elements of the crime.

ABSENCE OF THE TERM "WILLFUL"

■ Here, the challenged portion of the charge read that "[t]he defendant . . . did *feloniously* violate a No Contact Order pending trial." Clerk's Papers at 1 (emphasis added). RCW 10.99.050 uses the term "willful." *State v. Clowes,* 104 Wn. App. 935, 943-44, 18 P.3d 596 (2001) (citing RCW 10.99.050). Although an information must notify the defendant of the essential elements of a crime with which he is charged, the "exact statutory language" need not be used if "words 'conveying the same meaning and import are used.' " *Clowes,* 104 Wn. App. at 941 (quoting *Kjorsvik,* 117 Wn.2d at 108-09).

■ The phrase "unlawfully and feloniously" is equivalent to the term "knowingly." *State v. Krajeski,* 104 Wn. App. 377, 386, 16 P.3d 69, *review denied,* 144 Wn.2d 1002 (2001); *State v. Nieblas-Duarte,* 55 Wn. App. 376, 380-81, 777 P.2d 583, *review denied,* 113 Wn.2d 1030 (1989). Moreover, the terms "knowingly" and "intentionally" are the functional equivalents to "willfully." *State v. Robbins,* 15 Wn. App. 108, 113, 547 P.2d 288, *review denied,* 87 Wn.2d 1012 (1976); *see also Clowes,* 104 Wn. App. at 944 ("proof that a person acted 'knowingly' is proof that they acted 'willfully' "). In addition, the State's information alleged that Snapp assaulted Tonya by hitting or kicking her—an intentional act. Although the charging language would have been more direct if it included "willfully" instead of "feloniously," the terms are functional equivalents and the information adequately apprised the defendant of the essential elements of the offense charged.

SPECIFIC VIOLATION

██ Snapp next challenges the information for failing to set out the specific restriction that he violated. Snapp relies on RCW 26.50.110, which provides that violations of only certain restraint provisions constitute a crime. He argues that by failing to cite the specific restraint provision of the order that he is alleged to have violated, the information failed to adequately apprise him of the elements of his offense. In *State v. Goodman*, 108 Wn. App. 355, 359, 30 P.3d 516 (2001), *review denied*, 145 Wn.2d 1036 (2002), we held that RCW 10.99.020[6] does not establish a new crime or

---

[6] RCW 10.99.020 provides in pertinent part:

(3) "Domestic violence" includes but is not limited to any of the following crimes when committed by one family or household member against another:

(a) Assault in the first degree (RCW 9A.36.011);

(b) Assault in the second degree (RCW 9A.36.021);

(c) Assault in the third degree (RCW 9A.36.031);

(d) Assault in the fourth degree (RCW 9A.36.041);

(e) Drive-by shooting (RCW 9A.36.045);

(f) Reckless endangerment (RCW 9A.36.050);

(g) Coercion (RCW 9A.36.070);

(h) Burglary in the first degree (RCW 9A.52.020);

(i) Burglary in the second degree (RCW 9A.52.030);

(j) Criminal trespass in the first degree (RCW 9A.52.070);

(k) Criminal trespass in the second degree (RCW 9A.52.080);

(l) Malicious mischief in the first degree (RCW 9A.48.070);

(m) Malicious mischief in the second degree (RCW 9A.48.080);

(n) Malicious mischief in the third degree (RCW 9A.48.090);

(o) Kidnapping in the first degree (RCW 9A.40.020);

(p) Kidnapping in the second degree (RCW 9A.40.030);

(q) Unlawful imprisonment (RCW 9A.40.040);

(r) Violation of the provisions of a restraining order, no-contact order, or protection order restraining or enjoining the person or restraining the person from going onto the grounds of or entering a residence, workplace, school, or day care, or prohibiting the person from knowingly coming within, or knowingly remaining within, a specified distance of a location (RCW 10.99.040, 10.99.050, 26.09.300, 26.10.220, 26.26.138, 26.44.063, 26.44.150, 26.50.060, 26.50.070, 26.50.130, 26.52.070, or 74.34.145);

(s) Rape in the first degree (RCW 9A.44.040);

(t) Rape in the second degree (RCW 9A.44.050);

(u) Residential burglary (RCW 9A.52.025);

add elements to the crime that is charged. In other words, committing "domestic violence" does not require committing a specific crime but can be a number of crimes against another family member. The statute does not require that the information specify the degree of crime committed; thus, the information listing the crime as "assault" was sufficient and adequately apprised Snapp of the crime charged. Accordingly, we reject Snapp's claim.

Here the information alleges a domestic violence assault in Count I and describes Count I as "Felony Violation of a No Contact Order (Assault) (DV)."

> Any assault that is a violation of an order issued under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.

RCW 26.50.110(4). The information alleged that Snapp assaulted Tonya and that this assault also violated a no-contact order and, therefore, was a separate crime. There is no requirement that the information specify the degree of assault committed. *See Goodman*, 108 Wn. App. at 359; *State v. Dukowitz*, 62 Wn. App. 418, 422, 814 P.2d 234 (1991), *review denied*, 118 Wn.2d 1031 (1992). The information apprised Snapp that he was being charged with violating the no-contact order by assaulting Tonya and thus was sufficient.

VALIDITY OF THE UNDERLYING NO-CONTACT ORDER

Snapp also challenges the information and jury instructions, claiming that they are deficient because they failed to include the requirement that the no-contact order was valid. Other than his challenges to the validity of the order

---

(v) Stalking (RCW 9A.46.110); and

(w) Interference with the reporting of domestic violence (RCW 9A.36.150).

addressed above, Snapp does not specify any substantive challenge to the validity of the no-contact order. Instead, he asserts that the validity of a no-contact order is an implied element of the offense of violating a no-contact order and therefore the State must prove beyond a reasonable doubt that the order it alleged that he violated was valid by meeting any and all possible challenges to its validity. He cites *City of Seattle v. Edwards*, 87 Wn. App. 305, 308, 941 P.2d 697 (1997), and *State v. Marking*, 100 Wn. App. 506, 509, 997 P.2d 461, *review denied*, 141 Wn.2d 1026 (2000), as authority for this argument. But Snapp reads these cases too broadly.

*Edwards* addressed only whether the protective order had expired or was in effect when Edwards came within the prohibited distance of the alleged victim.[7] And *Marking* addressed only whether Marking knowingly violated a no-contact order issued under RCW 10.99.040 when he acceded to his wife's request that the two meet at her workplace and the no-contact order did not contain the mandatory consent warning that his wife's consent to contact did not relieve him of his obligations under the order. *Marking*, 100 Wn. App. at 507-09. These cases do not require the State to anticipate any possible unspoken challenge to the validity of a protective order and to prove the validity of the order to the jury beyond a reasonable doubt. Nor does every defect render a no-contact order invalid as Snapp asserts. *See, e.g., State v. Sutherland*, 114 Wn. App. 133, 136, 56 P.3d 613 (2002), *review denied*, 149

---

[7] The *Edwards* court addressed a protective order issued under chapter 26.50 RCW that prohibited Edwards from coming within 500 feet of the Quan home. 87 Wn. App. at 307-08. Because the issuing court did not strike the phrase "until one year from today" from the order, Division One of this court held that the protective order had expired before Edwards entered a phone booth 75 feet from the Quans' home. *Edwards*, 87 Wn. App. at 309. That court also stated: "The City finally argues that the conviction must be reinstated because Edward's appeal constitutes an impermissible collateral attack on the protective order. *See generally Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539-41, 886 P.2d 189 (1994). That argument is misplaced. *We have questioned neither the validity nor the wisdom of the entered order. Rather, we have merely interpreted its scope in determining whether it was violated.*" *Edwards*, 87 Wn. App. at 311 (emphasis added).

Wn.2d 1034 (2003) (error in citation to statute does not render no-contact order invalid).

As *Edwards* and *Marking* demonstrate, after a timely substantive challenge to the validity of a no-contact order, the State must prove the validity of the order in that regard. This is the same procedure applied in other cases in which court orders are elements of the charged offense. *See State v. Chervenell*, 99 Wn.2d 309, 312, 662 P.2d 836 (1983) (defendant's challenge in a habitual criminal proceeding requires the State to prove the validity of the predicate prior conviction beyond a reasonable doubt); *State v. Reed*, 84 Wn. App. 379, 384, 928 P.2d 469 (1997) (in prosecution for felon in possession of a firearm charge, defendant bears the initial burden of demonstrating constitutional error; once met, the State must prove validity beyond a reasonable doubt); *see also State v. Simmons*, 35 Wn. App. 421, 423, 667 P.2d 133 (validity of an arrest warrant presumed in resisting arrest prosecution), *review denied*, 100 Wn.2d 1025 (1983).

Here, Snapp does not assert a substantive challenge to the validity of the no-contact order and he did not take exception to the jury instruction on this specific issue. Neither does he challenge the jurisdiction of the court that issued the original no-contact order. In the absence of such a timely clear challenge to the viability of the order, the State is not required to presume invalidity. Nor need it prove that the trial court issuing the order complied with the myriad of procedures surrounding such orders in order to prove a violation of a no-contact order that was in effect on the date of the defendant's knowing and willful contact. It must, however, prove that there is "[1] an order . . . granted under . . . chapter 10.99 . . . RCW, [2] [the] person to be restrained knows of the order [and] [3] a violation of the restraint provisions." RCW 26.50.110(1).

Moreover, the statute on protection orders from foreign jurisdictions gives a "presumption in favor of validity where an order appears authentic on its face." RCW 26.52.020. While the statute includes no similar presumption for

protection orders issued in Washington, Snapp's argument would require us to presume the validity of protection orders from foreign jurisdictions and presume invalidity of the same orders issued by our own courts. We will not interpret statutes in such a way as to lead to absurd results. *In re Pers. Restraint of Brown*, 143 Wn.2d 431, 466, 21 P.3d 687 (2001).

AMENDMENT OF SENTENCE

 Snapp also objects to the trial court's requirement that he complete a batterer's treatment program and have no contact with Tonya until approved by his care provider.[8] He asserts that the trial court did not include these provisions in the initial judgment and sentence and, therefore, lost the authority to amend the judgment to include these conditions. The State asserts that the trial court discussed Snapp's need for treatment and continued no-contact at sentencing but inadvertently failed to include these requirements in the initial judgment.

CrR 7.8 provides that:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

CrR 7.8(a). A trial court may correct a clerical error in the judgment and sentence document. *State v. Klump*, 80 Wn. App. 391, 397, 909 P.2d 317 (1996). Whether a clerical error exists under CrR 7.8 is the same test used to determine a clerical error under CR 60(a), the civil rule governing amendment of judgments. *Klump*, 80 Wn. App. at 397;

---

[8] Snapp also challenges items marked by the trial court in the amended judgment and sentence relating to payments assessed. We do not consider these challenges here. Two of the items are mandated by statute. RCW 10.82.090; RCW 36.18.190. And the court may properly order a minimum monthly payment after entry of the judgment and sentence as it did here. RCW 9.94A.760 (formerly RCW 9.94A.145 (2001)). Finally, our record does not show that appellant challenged, to the trial court, his ability to pay incarceration costs.

*Presidential Estates Apartment Assocs. v. Barrett*, 129 Wn.2d 320, 326, 917 P.2d 100 (1996).

To determine whether an error is clerical or judicial, we look to "whether the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial." *Presidential*, 129 Wn.2d at 326. If it does, then the amended judgment should either correct the language to reflect the court's intention or add the language the court inadvertently omitted. *Presidential*, 129 Wn.2d at 326. If it does not, then the error is judicial and the court cannot amend the judgment and sentence. *Presidential*, 129 Wn.2d at 326.

Here, before adding the treatment program condition, the trial court reviewed the clerk's minutes for June 22, 2001, and found that the treatment program was intended to be included. Because the record establishes the court's original intention to include this provision, its omission was a clerical error and the trial court had the authority to correct the judgment and sentence document to reflect its original intention.

## CONCLUSION

Because the information sufficiently apprised Snapp, and the court properly instructed the jury on the essential elements of the crime of violating a no-contact order, and because the trial court merely corrected Snapp's judgment and sentence to include the previously imposed requirement that he complete batterer's treatment omitted due to a clerical mistake, we affirm.

SEINFELD and HOUGHTON, JJ., concur.