FILED
COURT OF APPEALS
DIVISION II

2013 OCT -8 AM 9: 23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43020-7-II |
| Respondent, | |
| v. | |
| EMMETT ARTHUR MEADOWS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. – Emmett Arthur Meadows appeals one of his seven jury trial convictions for violation of a protection order[1] and from all of his sentences. He argues that (1) the evidence was insufficient to support his conviction for violation of a court order (count VII) because it did not establish that the victim was a family or household member; (2) his total sentence, including community custody, exceeds the statutory maximum for the offenses; (3) the trial court erred in requiring him to undergo substance abuse evaluation and treatment as a condition of community custody because substance abuse did not contribute to the crime; and (4) the judgment and sentence contradicts the trial court's oral ruling declining to enter a no-contact order at sentencing. Accepting the State's concessions that the total sentence exceeds the statutory maximum and that the written judgment and sentence's no-contact provision does not

---

[1] RCW 26.50.110.

reflect the trial court's oral ruling, we remand for resentencing to correct the excessive sentences and to clarify the no-contact provision. Finding no other error, we otherwise affirm.

FACTS

I. No-Contact Order Violations

Meadows and Susan Michelle Landree dated on and off for about 26 years. From 2009 until early 2011, Meadows periodically lived with Landree and her three children.[2] On January 26, 2011, Landree obtained a permanent protection order[3] prohibiting Meadows from contacting her or her children. Meadows was aware of this restraining order and was convicted of violating this protection order twice before April 2011.

On April 2, Landree called the police to report that Meadows was calling her cell phone and leaving threatening messages despite the protection order against him. Landree played five voicemail messages from Meadows to law enforcement officers and filed a written statement.

On April 17, Landree contacted law enforcement again and reported that Meadows had been at her home that day and that he had assaulted her. She reported that Meadows had threatened to kill her if she reported the incident. Landree's youngest son DG was home during this incident and had heard Meadows and Landree arguing that evening; DG had also been in the same room as Meadows earlier in the day.

---

[2] Meadows is not Landree's children's father.

[3] Although the trial court admitted a copy of this protection order into evidence, it is not part of the appellate record.

Another officer responded to another protection order violation call at Landree's home the next day, April 18. This time, Landree reported that Meadows had called her from a blocked number and she provided a written statement.

## II. PROCEDURE

The State charged Meadows with eight counts of felony "domestic violence court order violation"; each count alleged that Meadows had had two previous convictions for violations of a court order. Clerk's Papers (CP) at 15-20 (capitalization omitted). Susan Landree was the named victim for all counts except count VII; DG was the named victim for count VII.

The State's witnesses testified as described above. In addition, Landree testified that Meadows had drug problems, that despite the protection order she would periodically allow Meadows to stay with her when he would promise that he would get some treatment, and that a few days before the alleged assault Meadows had been using heroin. Meadows testified that he had not left any of the voicemail messages and that he was not at Landree's home on April 17.

The State proposed special verdict forms for each count related to Landree that required the jury to determine whether Landree and Meadows were members of the same family or household. The State advised the trial court that it was not submitting a similar special verdict form for the count related to DG (count VII), because DG did not fall within the statutory definition of a member of the same family or household as Meadows. Meadows did not object to the lack of a special verdict form for count VII.

The jury found Meadows guilty on all counts except the count related to the alleged April 18 text message to Landree (count VIII), and found that Meadows and Landree were members of the same family or household. The judgment and sentence reflected these findings, stating, "The

3

crime charged in Count(s) I, II, III, IV, V, and VI involve(s) domestic violence." CP at 139. Because there was no special verdict finding for count VII, the count involving contact with DG, the judgment and sentence states that this conviction was for a "court order violation" rather than a "domestic violence court order violation." CP at 139 (capitalization omitted).

The trial court sentenced Meadows to 60-month concurrent sentences for each count. The court also imposed 12 months of community custody on counts I through VII, and included the following handwritten notation: "Total time of incarceration and community custody should not exceed statutory maximum of 60 months." CP at 146.

The judgment and sentence also included the following finding: "The court finds that the offender has a chemical dependency that has contributed to the offense(s). RCW 9.94A.607," CP at 139; and ordered that Meadows "undergo an evaluation for treatment for" domestic violence and substance abuse. CP at 147. Additionally, although the trial court had orally stated that it would not impose any no-contact orders after Landree requested no such limitations, the judgment and sentence prohibited Meadows from contacting Landree or DG. Appendix F to the judgment and sentence also stated, "The offender shall not have direct or indirect contact with the <u>victim</u> of the crime or a specified class of individuals." CP at 151.

## ANALYSIS

### I. COUNT VII: ABSENCE OF FAMILY OR HOUSEHOLD MEMBER FINDING

Meadows first argues that the evidence was insufficient to support a domestic violence court order violation conviction relating to DG because the State failed to prove that DG was a

family or household member as defined under RCW 26.50.010(2).[4] This argument, which is more properly characterized as a claim that whether DG was a family or household member was an element of the offense, fails because Meadows misconstrues the "domestic violence" designation in this case.

Because the protection order Meadows violated was a domestic violence protection order naming all of Landree's children as protected parties,[5] Meadows's violation of this order by contacting DG was effectively a domestic violence protection order violation. The plain language of RCW 26.50.020(1)(a) expressly allows a victim of domestic violence to petition for a protection order "on behalf of himself or herself and on behalf of minor family or household members." The judgment and sentence here, however, accurately reflects that although Meadows may have violated a domestic violence protection order, the violation related to DG

---

[4] RCW 26.50.010(2) provides:

> "Family or household members" means spouses, domestic partners, former spouses, former domestic partners, persons who have a child in common regardless of whether they have been married or have lived together at any time, adult persons related by blood or marriage, adult persons who are presently residing together or who have resided together in the past, persons sixteen years of age or older who are presently residing together or who have resided together in the past and who have or have had a dating relationship, persons sixteen years of age or older with whom a person sixteen years of age or older has or has had a dating relationship, and persons who have a biological or legal parent-child relationship, including stepparents and stepchildren and grandparents and grandchildren.

We note that although it is surprising that this statute does not include a romantic partner's children who have also lived with the parent's romantic partner, a victim of domestic violence may petition for a domestic violence protection order on behalf of his or her minor family or household members. RCW 26.50.020(1)(a).

[5] Meadows did not challenge the existence of or the validity of the protection order.

was not itself a domestic violence offense, and there was no special verdict finding that this count was a domestic violence offense. The jury instructions and the judgment and sentence accurately reflect that whether DG was a family or household member was *not* an element of the violation of a protection order offense. *See State v. Goodman*, 108 Wn. App. 355, 359, 30 P.3d 516 (2001) (holding that "domestic violence is not a separate crime with elements that the State must prove," and that "[i]dentifying a crime as a domestic violence crime 'does not itself alter the elements of the underlying offense.'"), *review denied*, 145 Wn.2d 1036 (2002). Accordingly, this argument fails.[6]

## II. EXCESSIVE SENTENCE UNDER RCW 9.94A.701(9)

Meadows next argues that his total sentence, including community custody, exceeds the statutory maximum for the offenses under RCW 9.94A.701(9).[7] The State concedes this error. Because the trial court's sentence of 60 months on each count with an additional 12-month term of community custody exceeds the statutory maximum for these class C offenses and our Supreme Court has held that the hand-written limitation present in the judgment and sentence is not sufficient under the current version of RCW 9.94A.701(9), we accept the State's concession.

---

[6] In its response, the State asserts that count VII on the judgment and sentence is "mislabeled" as a domestic violence offense and states that we should remand to correct this error. Br. of Resp't at 7. The judgment and sentence does not, however, state that count VII was a domestic violence offense.

[7] RCW 9.94A.701(9) provides:
> The term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021.

*State v. Boyd*, 174 Wn.2d 470, 472-73, 275 P.3d 321 (2012). Accordingly, we remand for resentencing under *Boyd* and RCW 9.94A.701(9).

### III. SUBSTANCE ABUSE EVALUATION AND TREATMENT CONDITION

Meadows next argues that the trial court erred in imposing the requirement that he undergo substance abuse and treatment as a community custody condition. He asserts that "[t]he trial court did not find that [he] suffered from a chemical dependency/substance abuse that contributed to the offense of domestic violence court order violation," and that the record would not support any such finding. Br. of Appellant at 9. These arguments fail.

First, Meadows is incorrect that the trial court did not make a finding that he had a chemical dependency that contributed to the offenses—the judgment and sentence includes such a finding. Second, as to the support in the record for the finding that a chemical dependency contributed to the offenses, Landree repeatedly testified that Meadows had drug problems and she testified that at least one of the court order violations occurred shortly after Meadows had been using heroin. This is sufficient to support the trial court's finding and the trial court's imposition of the chemical dependency condition.

### IV. NO-CONTACT ORDER

Finally, Meadows argues that the trial court erred by including a no contact provision in the judgment and sentence after expressly stating that it did not intend to impose a no-contact order at Landree's request. Although the State asserts that the written judgment and sentence would normally control, the State asks us to remand for clarification of the no contact issue because we are already remanding to correct the excessive sentence. We agree.

Generally, a written judgment is the final judgment in a case regardless of a trial court's previous oral rulings. *See State v. Skuza*, 156 Wn. App. 886, 898, 235 P.3d 842 (2010), *review denied*, 170 Wn.2d 1021 (2011) ("To the extent its oral rulings conflict with its written order, a written order controls over any apparent inconsistency with the court's earlier oral ruling."). But given the trial court's oral ruling, it is likely the no-contact order was merely a scrivener's error. Because we remand this matter for resentencing, the trial court may also reconsider the no-contact order provision.

Accordingly, we affirm the conviction on count VII and the community custody condition but remand for resentencing on all counts and to allow the trial court to clarify the no contact order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

_____

Bjorgen, J.